THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TASHA M. JEWKES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ORANGEVILLE CITY, a Utah City, and BRITTNEY ALGER, aka BRITTNEY RICHARDS, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER CONVERTING DEFENDANTS' [11] MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT AND GRANTING THE CONVERTED MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:24-cv-00102-DN<br><br>District Judge David Nuffer |

**Table of Contents**

1   INTRODUCTION ........................................................................................................... 1
    1.1   RULE 12(b) TO RULE 56 CONVERSION ......................................................... 2
2   UNDISPUTED MATERIAL FACTS ............................................................................ 5
3   STANDARD OF REVIEW ............................................................................................ 7
4   DISCUSSION ................................................................................................................. 9
    4.1   The Undisputed Facts Demonstrate that Orangeville Employed Less Than Fifteen (15) Employees in 2022 and 2023. ..................................................... 11
    4.2   The Undisputed Material Facts Demonstrate that Ms. Jewkes Has No Further Remedies for Her Title VII Claims Under Utah's Anti-Discrimination Act. ........ 13
    4.3   The Undisputed Material Facts Demonstrate that Ms. Jewkes Failed to Provide Required UGIA Notice of her Wrongful Termination and Defamation Claim Against Ms. Alger. ........................................................................... 14
    4.4   Ms. Jewkes' ERISA Claim Fails for Her Failure to Show Specific Intent to Deny Benefits or That It Was A Motivating Factor for Defendants' Actions and Because The Claim is De Minimis. ................................................................. 15
ORDER ................................................................................................................................... 19

# 1   INTRODUCTION

Defendants Orangeville City ("Orangeville") and Brittney Alger (collectively, "Defendants") seek dismissal[1] of Plaintiff Tasha M. Jewkes Amended Complaint in its entirety,

---

[1] Motion to Dismiss ("Motion"), docket no. 11, filed February 12, 2025.

and with prejudice. Plaintiff Tasha M. Jewkes filed this action asserting claims of gender discrimination, retaliation, hostile work environment, wrongful termination, and ERISA violations against her prior employer, Orangeville.[2]

Ms. Jewkes' first three causes of action—gender discrimination, retaliation, and hostile work environment—are brought against both Defendants, Orangeville and Brittney Alger (collectively, "Defendants") under Title VII of the Civil Rights Act of and the Utah Antidiscrimination Act ("UADA").[3] Against Orangeville, alone, Ms. Jewkes alleges wrongful termination (fourth cause of action) under Utah Code Ann. § 34-29-19, and in her sixth, and last cause of action, she alleges that Orangeville violated ERISA by refusing to supply Plaintiff her health insurance stipend.[4] As her fifth cause of action, Ms. Jewkes alleges that Ms. Alger—in her personal capacity and outside of her role as treasurer—defamed Ms. Jewkes and "ruined her reputation within their city."[5]

## 1.1   RULE 12(b) TO RULE 56 CONVERSION

Defendants seek dismissal of Ms. Jewkes' first, second, third, and fourth causes of action under Rule 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state that Orangeville is an employer with more than 15 employees for twenty (or more) calendar weeks in 2022 or 2023, as is required under Title VII.[6] The Motion also argues many other reasons for dismissal:

---

[2] *See generally* Amended Complaint, docket no. 5.

[3] *Id.* at 13–16, ¶¶ 94–127.

[4] *Id.* at 16–17, 19, ¶¶ 128–38, 156–59.

[5] *Id.* at 18, ¶ 141; *see also* Opposition to Defendants' Motion to Dismiss ("Response") (noting that she initially brings this claim against both Defendants, she corrects this in her Response), docket no. 17, 6, filed March 29, 2025. ("Ms. Jewkes' defamation claims are only alleged against Ms. Alger in her personal capacity.").

[6] Motion at 2–4, docket no. 11; *see also*

- Ms. Jewkes' first, second, and third causes of action fail to state a claim under the Utah Antidiscrimination Act ("UADA"). Unlike Title VII, the remedies under the UADA are administrative only, and do not provide a private right of action.[7]
- Ms. Jewkes failed to supply a Notice of Claim in compliance with the Utah Governmental Immunity Act (UGIA) to Orangeville, which bars her state law claims brought under the UADA.[8]
- This same logic, of her failure to deliver a Notice of Claim, Defendants argue, applies to Ms. Jewkes' fourth and fifth causes of action, her state law claims for wrongful termination and defmation.[9]
- Lastly, Orangeville contends that Ms. Jewkes' sixth cause of action, for an ERISA violation, should be dismissed for failure to demonstrate that there was specific intent or something more than an incidental loss.[10]

Plaintiff Tasha M. Jewkes opposes the Motion ("Response"),[11] arguing that denial is appropriate:

> (1) because Orangeville had more than 15 employees during Ms. Jewkes period of employment, thus bringing Orangeville into the purview of Title VII, (2) because Utah statutes has [sic] no limitation on the number of employees a political subdivision must have in order to be required to comply with Utah's anti-discrimination statutes, (3) because Ms. Alger can be personally liable for her discriminatory behavior pursuant to Utah's anti-discrimination statutes, (4) because Ms. Jewkes has properly set forth all necessary allegations of an ERISA interference claim, and (5) because Ms. Alger's defamation of Ms. Jewkes was in her personal capacity, not in her capacity as an employee of Orangeville City.[12]

In support of her Response, and these arguments, Ms. Jewkes attached her UALD Complaint, Right to Sue letter, and her own declaration arguing that it is undisputed that Orangeville has "more than 15 employees," and that she "was aware of 17 employees."[13]

---

[7] Reply Memorandum in Support of Motion to Dismiss ("Reply") at 7, docket no. 19, filed April 11, 2025.

[8] Motion at 2, docket no. 11; *see also* Response at 2, ¶ 2, docket no. 17 ("Ms. Jewkes gave notice of her claim through an administrative procedure complaint with the Utah Anti-Discrimination and Labor Division (UALD) and the UALD issued a Charge against Orangeville City pursuant to Utah Code Ann. § 34A-5-101 *et seq.*").

[9] *See* Motion at 2, 5– 9, docket no. 11.

[10] *See id.*

[11] DUCivR 7-1(a)(4) (referring to the opposition to a FRCP 12 motion to dismiss as a "response," as opposed to a memorandum in opposition.).

[12] Response at 1–2, docket no. 17.

[13] Declaration of Tasha Jewkes at 1–2, ¶¶ 3–4, docket no. 18, filed March 31, 2025.

Rule 12(d) of the Federal Rules of Civil Procedure provides that consideration of matters outside the pleadings requires application of Rule 56:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. *All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.*[14]

In their Reply, Orangeville noted this conversion and submitted their reply with the payroll register, records, and the Declarations of Defendant Ms. Alger and Orangeville employee, Shaun Bell.[15] These materials, and those attached to Jewkes' Response are considered "matters outside the pleadings."[16] Both parties have had a reasonable opportunity to present material outside the pleadings pertinent to the Motion.[17]

The Tenth Circuit has explained that generally a 12(b)(1) motion cannot be converted into a summary judgment motion, but there is a "widely recognized exception to this rule.[18] If the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) *or* Rule 56."[19] As explained below, this Motion does not turn on a jurisdictional issue. Any jurisdictional questions related to Ms. Jewkes' first, second, and third causes of action are so intertwined with the merits of the case (whether Orangeville had the requisite number of employees to bring claims under Title VII) that the issues should be resolved as if this were a summary judgment motion.

---

[14] Fed. R. Civ. P. 12 (d).

[15] Declaration of Brittney Alger, docket no. 20, filed April 11, 2025, and Declaration of Shaun Bell docket no. 21, filed April 11, 2025.

[16] *See* Fed. R. Civ. P. 12(b)

[17] Both parties have had an opportunity to respond, and Defendants' Reply is fashioned to fit a dismissal motion converted into a summary judgment motion. *See* Reply at 47, docket no. 19.

[18] *See Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987).

[19] *Id.*

After consideration of the parties' arguments and the undisputed material facts, the Motion is converted, and summary judgment is GRANTED.

## 2   UNDISPUTED MATERIAL FACTS[20]

1.   The Amended Complaint does not include facts that Orangeville employed more than fifteen employees.[21]

2.   For the time at issue in this matter, Orangeville employed less than 15-employees—specifically, nine employees in 2022 and eight in 2023.[22]

3.   On June 8, 2023, Ms. Jewkes became a full-time employee and qualified for benefits, including health insurance.[23]

4.   "Because [Ms. Jewkes], was already covered by insurance through her husband's employment, she was initially not certain if she wanted to be covered by the City's health insurance plan, or if she wanted to opt-out and instead receive a monthly stipend [of $600]. . . ."[24]

5.   For this reason, the City Council did not vote on her health insurance election at the June 8, 2023, City Council meeting.[25]

---

[20] The following Undisputed Facts are taken from the parties' memoranda including Ms. Jewkes' Amended Complaint (docket no. 5), the Motion (docket no. 11), Response (docket no. 17), and Reply (docket no. 19).

[21] *See generally* Amended Complaint at 1–16, docket no. 5 (noting that this is generally known as the 15-employee element of a Title VII claim).

[22] Declaration of Brittney Alger at 2, ¶ 11, docket no. 20; *see id.* at Exhibit A – Payroll Register 2022, docket no. 20-1; *see also id.* at Exhibit B – Payroll Register 2023, docket no. 20-2.

[23] *Compare* Amended Complaint at 2, ¶ 15, docket no. 5 (alleging full-time employment began in late May 2023); *with* Response at Exhibit A – UALD Complaint and Charge, docket no. 17-1, filed March 29, 2025 (noting that the statement signed by Ms. Jewkes and included in the Charge of Discrimination provides, "On June 8, 2023, I was approved to work full time, however they did not give me my insurance stipend for benefits . . . ."). *See also* Declaration of Shaun Bell at 2, ¶ 8, docket no. 21.

[24] Amended Complaint at 5, ¶ 37, docket no. 5.

[25] *Id.*; *see also* Declaration of Shaun Bell at 2, ¶ 11, docket no. 21.

6.       Ms. Jewkes was unaware that she had to make the election at a city council meeting, therefore, she did not attend or make the election at the next city council meeting on July 13, 2023.[26]

7.       At the end of July 2023, at Orangeville Days, Ms. Jewkes approached the then-acting Orangeville mayor, Mayor Robertson, and from this conversation he agreed that she was entitled to half of her stipend ($300).[27]

8.       This payment for $300 was then authorized to Ms. Jewkes but later reversed,[28] "Ultimately, Plaintiff received this $300 for the month of June at the beginning of August 2023."[29]

9.       No payment authorization or payment was ever made for the pay period June 8th (from the date her full-time employment began) until June 24th (end of the pay period).[30]

10.       Orangeville approved the election of benefits for Ms. Jewkes at their August 10, 2023, City Council meeting.[31]

11.       Specifically, Ms. Jewkes received two stipend payments on July 28, 2023: (1) A *retroactive payment* of $300 for the last part of June, from June 25, 2023, to July 8, 2023; and, (2) $300 for the period July 9, 2023 to July 22, 2023.[32]

---

[26] Amended Complaint at 6, ¶¶ 39–40; docket no. 5; *see also* Declaration of Shaun Bell at 2, ¶ 10, docket no. 21.

[27] Amended Complaint at 6, ¶ 46, docket no. 5

[28] *Id.* at 6, ¶¶ 46–47.

[29] *Id.* at 6, ¶ 48.

[30] *Id.*

[31] Amended Complaint at 6, ¶ 48; docket no. 5; *see also* Declaration of Shaun Bell at 2, ¶ 11, docket no. 21 (noting there are disputed facts, which are immaterial and relate the timing of the City Council's approval of the stipend).

[32] Amended Complaint at 5, ¶ 37, docket no. 5

12. On August 7, 2023, Ms. Jewkes received another $300 stipend for the time period July 23, 2023, to August 5, 2023.[33]

13. And, again on August 21, 2023, for the period from August 6, 2023, to August 19, 2023.[34]

14. During June of 2023, Travis Richards, another Orangeville employee, also elected to receive the health insurance stipend after his wife began working for Orangeville full-time (she opted for health insurance).[35]

15. Unlike Ms. Jewkes, Mr. Richards did not receive any retroactive health insurance stipend for June; rather, his health insurance stipend was only for the pay period July 8 through 22, 2023.[36]

16. Ms. Jewkes' employment with Orangeville was terminated on August 17, 2023.[37]

## 3  STANDARD OF REVIEW

The Motion seeks dismissal under Rules 12(b)(1) and 12(b)(6).[38] Specifically, the Motion argues that the 15-employee requirement is jurisdictional and therefore the Title VII claims in the first three causes of action should be dismissed under Rule 12(b)(1) as opposed to 12(b)(6).[39] However, the U.S. Supreme Court has explained that "Title VII's 15-employee threshold is an element of a plaintiff's claim for relief, not a jurisdictional issue."[40] Therefore, the Title VII

---

[33] *Id.* at 10.

[34] *Id.*

[35] *Id.* ¶ 41; *see also* Declaration of Shaun Bell at Exhibit A, 3, docket no. 21-1; *see also* Response at Exhibit A – UALD Charge of Discrimination, docket no. 17-1, filed March 29, 2025 (noting that the Charge of Discrimination is signed by Ms. Jewkes).

[36] Declaration of Shaun Bell at 3, ¶ 13, docket no. 21.

[37] Amended Complaint at 2, ¶ 10, docket no. 5.

[38] Motion at 8, docket no. 11.

[39] *Id.* at 3.

[40] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006).

claims should be reviewed under the Rule 12(b)(6)'s standard, but, as explained above, this Motion is converted into a Rule 56 summary judgment motion.

Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] "[A] mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact."[42] The court "look[s] at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party."[43] "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[44]

"A summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences."[45] "The movant must demonstrate entitlement beyond a reasonable doubt and if an inference can be deduced from the facts whereby the non-movant might recover, summary judgment is inappropriate."[46] The movant has the initial burden to show "an absence of evidence to support an essential element of the non-movant's case."[47]

If the movant satisfies this burden, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the

---

[41] Fed. R. Civ. P. 56(a).

[42] *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).

[43] *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

[44] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[45] *Les Indus. Wipeco, Inc. v. Bluestem Mgmt. Advisors, LLC,*, No. 21-2289-JAR-ADM, 2023 WL 4295364 (D. Kan. June 30, 2023).

[46] *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33, 36 (10th Cir. 1975).

[47] *Johnson v City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

existence of that element."[48] The non-movant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."[49] "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to defeat a properly supported motion for summary judgment."[50]

# 4   DISCUSSION

Ms. Jewkes filed this action on December 11, 2024, and later amended her complaint on January 15, 2025 ("Amended Complaint").[51] The Amended Complaint's first, second, and third causes of action allege that the Defendants discriminated against her based on gender; retaliated against her by terminating her employment; and created a hostile work environment, all of which she argues was in violation of Title VII.[52] Against Orangeville, alone, Ms. Jewkes alleges wrongful termination (fourth cause of action) under Utah Code Ann. § 34-29-19, and in her sixth, and last cause of action, that Orangeville violated ERISA by refusing to supply Plaintiff her health insurance stipend.[53] The Amended Complaint's fifth cause of action, for defamation, alleges Ms. Alger, alone, and in her personal capacity—outside of her role as treasurer – has defamed and ruined her reputation within their city.[54]

In response to the Amended Complaint, Defendants moved for dismissal and contend that summary judgment is warranted because Orangeville has less than 15-employees; Ms. Jewkes

---

[48] *Id.*

[49] *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (abrogated on other grounds).

[50] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).

[51] Complaint, docket no. 1, filed December 11, 2024; Amended Complaint, docket no. 5, filed January 15, 2025.

[52] Amended Complaint at 12– 16 , ¶¶ 94–127, docket no. 5.

[53] *Id.* at 16–17, 19, ¶¶ 156– 59.

[54] *Id.* at 18–19, ¶¶ 139–55; *see also* Response at 6, docket no. 17, ("Ms. Jewkes' defamation claims are only alleged against Ms. Alger in her personal capacity.").

did not provide a UGIA Notice of Claim; there is no private cause of action for Ms. Jewkes' state law claims; Ms. Alger is immune from claims of defamation, and her ERISA violation claim is an incidental loss of benefits and Orangeville had no specific intent to violate ERISA.[55]

Ms. Jewkes contends that summary judgment is unwarranted for her first, second, and third causes of action because Orangeville employed more than the required 15-employees and there are genuine issues of material fact that remain.[56] She agrees that these Title VII claims cannot be brought against Ms. Alger and are against Orangeville alone.[57] Ms. Jewkes points to her declaration in support of her claims that Orangeville "had more than 15 employees during Ms. Jewkes period of employment."[58] This argument fails when confronted and compared with the Payroll Register presented by Orangeville, which shows that during the relevant time frame Orangeville had nine employees in 2022 and eight in 2023.[59]

Ms. Jewkes also contends that summary judgment is unwarranted for her fourth cause of action, wrongful termination, because this is a statutory cause of action and she has met "all of the administrative procedures required under Utah's anti-discrimination statute."[60] Ms. Jewkes admits that a Notice of Claim for her state claims against Defendants, required under the UGIA,[61] was not delivered to Orangeville.[62] Instead Ms. Jewkes contends that she gave "notice

---

[55] Motion at 3–9, docket no. 11; *see also* Reply at 6–20, docket no. 19.

[56] Response at 1–2, docket no. 17.

[57] *Id.* at 3.

[58] *Id.* at 1.

[59] Declaration of Brittney Alger at 2, ¶ 11, docket no. 20; *see Id.* at Exhibit A – Payroll Register 2022, docket no. 20-1; *see also id.* at Exhibit B – Payroll Register 2023, docket no. 20-2.

[60] Response at 4, docket no. 17.

[61] Utah Code Ann. § 63G-7-401.

[62] *Id.*; *see also* Response at 2, 6, docket no. 17.

10

of her claim through an administrative procedure complaint with the Utah Anti-Discrimination and Labor Division (UALD)."[63]

Ms. Jewkes argues that her fifth cause of action for defamation is not subject to governmental immunity, or summary judgment, because this claim is "only . . . against Ms. Alger in her personal capacity."[64] Finally, Ms. Jewkes contends that her sixth cause of action allege Orangeville's failure to pay her the $300 is more than an incidental delay but "a permanent loss and permanent interference with ERISA rights."[65] She argues that this overcomes summary judgment.[66]

After careful review of the record, briefs, and governing case law, the following analysis evaluates the application of law to each of Ms. Jewkes's legal theories in support of her Amended Complaint.

### 4.1   The Undisputed Facts Demonstrate that Orangeville Employed Less Than Fifteen (15) Employees in 2022 and 2023.

The parties' materials submitted outside the pleadings demonstrate that Orangeville had less than "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."[67] The term "employer" under Title VII includes "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person."[68] "The term 'employee' means an individual employed by an employer, except that the term 'employee' *shall not include any person elected*

---

[63] Response at 2, ¶ 2, docket no. 17.

[64] *Id.* at 6.

[65] *Id.*

[66] *Id.*

[67] Reply at 6–20, docket no. 19; *see also* 42 U.S.C.A. S 2000e(b).

[68] 42 U.S.C. § 2000e, 42 U.S.C. § 2000e-2.

11

*to public office* in any State or political subdivision of any State by the qualified voters thereof . . ."[69] Claims brought under Title VII cannot be brought against public employers with less than 15 employees.[70] This extends to state municipal employers.[71]

The Amended Complaint does not include facts establishing that Orangeville is an employer with 15 employees,[72] which is required for Title VII to apply.[73] To rectify this error, Ms. Jewkes included with her response her declaration to allege that Orangeville had more than 15 employees in 2022 and 2023.[74] Ms. Jewkes Declaration names 17 employees:

> Royal Oakey, Jesse Nicholson, Dave McKee, Travis Richards, Carolynn Moore, Kevin Butler, Carol Stilson, Greg Jewkes, Tracy Addley, Shaun Bell, David Robertson, Michael Tuttle, Seth Manning, Tasha Jewkes, Brittney Alger (Richards), Cindy Nielson, and Janice Winn.[75]

Orangeville submitted Ms. Alger's declaration explaining that Carol Stilson, Greg Jewkes, Shaun Bell, and David Robertson were all elected officials during the relevant time periods.[76] Joseph McKee and Cindy Nielson did not work more than 20 weeks in either 2022 or 2023.[77] Of the others, Royal Ockey and Janice Winn both only worked more than 20 weeks in 2022, but not in 2023.[78] And, Kevin Butler and Brittney Alger both worked more than 20 weeks in 2023 but not in 2022.[79] Finally, Michael Tuttle and Seth Manning are both volunteers with Orangeville: Mr.

---

[69] 42 U.S.C. § 20003(f).

[70] *Id.* at § 2000e, § 2000e-2; *see also Mount Lemmon Fire Dist. v. Guido*, 586 U.S. 1, 4, 139 S. Ct. 22, 25, 202 L. Ed. 2d 262 (2018 (emphasis added).

[71] *Scott v. City of Minco*, 393 F. Supp. 2d 1180, 1189 (W.D. Okla. 2005).

[72] *See generally* Amended Complaint at 1–16, docket no. 5

[73] *Arbaugh*, 546 U.S. at 516 (2006).

[74] Response at 1–2, docket no. 17; *see also* Declaration of Tasha Jewkes at 1–2, ¶¶ 3–4, docket no. 18.

[75] Declaration of Tasha Jewkes at 2, ¶ 4, docket no. 18.

[76] Declaration of Brittney Alger at 2, ¶ 10, docket no. 20.

[77] *Id.* at 2–3, ¶ 12.

[78] *Id.*

[79] *Id.*

Tuttle is a volunteer firefighter and Mr. Manning is a volunteer City Planning and Zoning Administrator.[80]

A review of the competing declarations, and supporting payroll registers, establish the undisputed facts that Orangeville did not have more than 15 employees in either 2022 or 2023. The undisputed material facts demonstrate that Ms. Jewkes' cannot establish the essential "number of employees" element of her claims. Because she has failed to produce evidence sufficient to create a genuine issue for trial, Defendants are entitled to judgment as a matter of law on each of the Amended Complaint's Title VII claims.

### 4.2    The Undisputed Material Facts Demonstrate that Ms. Jewkes Has No Further Remedies for Her Title VII Claims Under Utah's Anti-Discrimination Act.

Unlike Title VII of the Civil Rights Act, the UADA does not allow a private right of action.[81] In *Gottling v. P.R., Inc.*, the Utah Supreme Court held that the "UADA preempts all common law remedies for employment discrimination."[82] "The Utah Anti–Discrimination Act . . . provides an administrative remedy for discrimination, retaliation, or harassment by an employer on the basis of sex, race, color, pregnancy, age, religion, national origin, or disability."[83] This administrative remedy includes claims for wrongful termination based on employment discrimination.[84] The Utah Supreme Court relied on the language of the statute, which provides that the UADA administrative process is the "exclusive remedy under state law

---

[80] *Id.* at ¶ 13.

[81] *Buckner v. Kennard*, 2004 UT 78, ¶ 37, 99 P.3d 842, 852 ("Many statutes do not provide a private right to sue in court. For example, the Utah Antidiscrimination Act prohibits certain employment practices. However, the exclusive remedy for an employee claiming a violation of the statute is an appeal to the state Division of Antidiscrimination and Labor.").

[82] *Gottling v. P.R. Inc.*, 2002 UT 95, ¶ 21, 61 P.3d 989, 997.

[83] *Id.* ¶ 2.

[84] *Id.* ¶ 22.

for employment discrimination," and explains that the UADA provides no private right of action.[85]

Ultimately, Ms. Jewkes' remedies for her allegations regarding employment discrimination have been exhausted by administrative process, and summary judgment is appropriate with regards to her state claims for gender discrimination, retaliation, hostile work environment, and wrongful termination.

### 4.3   The Undisputed Material Facts Demonstrate that Ms. Jewkes Failed to Provide Required UGIA Notice of her Wrongful Termination and Defamation Claim Against Ms. Alger.

Before maintaining an action "against a governmental entity, *or governmental entity's employee* for an act or omission occurring during the performance of the employee's duties, within the scope of employment," that individual must "file a written notice of claim with the entity . . . regardless of *whether or not the function giving rise to the claim is characterized as governmental*."[86] Ms. Jewkes admits that she did not filed a Notice of Claim with Orangeville regarding any of the claims brought in her Amended Complaint.[87]

Instead, Ms. Jewkes contends that she provided her "notice of her claim through an administrative procedure complaint with the Utah Anti-discrimination Division (UALD)."[88] This is insufficient under the UGIA, which requires that a notice of claim set forth the facts, nature of the claim, damages, claims being pursued, and the signature of the person making the claim.[89]

---

[85] *Id.*; *see also* Utah Code Ann. § 34A-5-107(15).

[86] Utah Code Ann. § 63G-7-401 (emphasis added).

[87] Motion at 2, docket no. 11; *see also* Response at 2, ¶ 2, docket no. 17 ("Ms. Jewkes gave notice of her claim through an administrative procedure complaint with the Utah Anti-Discrimination and Labor Division (UALD) and the UALD issued a Charge against Orangeville City pursuant to Utah Code Ann. § 34A-5-101 *et seq.*").

[88] Response at 2, ¶ 2, docket no. 17 ("Ms. Jewkes gave notice of her claim through an administrative procedure complaint with the Utah Anti-Discrimination and Labor Division (UALD) and the UALD issued a Charge against Orangeville City pursuant to Utah Code Ann. § 34A-5-101 *et seq.*").

[89] Utah Code Ann. § 63G-7-401(4)(a).

The UALD Complaint signed by Ms. Jewkes may set for the facts and nature of her claims, but fails to include "damages, and the claims being pursued."[90] The UALD notice does not foreshadow her Amended Complaint which includes a request for actual, compensatory, and punitive damages along with attorney fees, litigation expenses, and post- and pre-judgment interest, all of which she claims is in excess of $1,000,000.[91]

A Notice of Claim under Utah Code Ann. § 63G-7-401(4)(b) must also be "delivered, transmitted, or sent" to "the city or town clerk, when the claim is against an incorporated city or town."[92] Orangeville is an incorporated city and its designated agent to receive the notice of claim is the town clerk, not the mayor.[93] Ms. Jewkes does not indicate who or how she delivered her UALD Complaint only that it was given through an administrative procedure.[94]

Based on the undisputed material facts, Ms. Jewkes did not deliver a Notice of Claim to Orangeville's City Clerk. Accordingly, summary judgment is granted in Defendants' favor on the Amended Complaint's fifth cause of action for defamation.

### 4.4 Ms. Jewkes' ERISA Claim Fails for Her Failure to Show Specific Intent to Deny Benefits or That It Was A Motivating Factor for Defendants' Actions and Because The Claim is De Minimis.

29 U.S.C. § 1140 (referred to as Section 510 of ERISA) states in part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. . . .

---

[90] *See generally* Response at Exhibit A – UALD Complaint and Charge, docket no. 17-1, filed March 29, 2025.

[91] Amended Complaint at 20–21, ¶¶ f–k, docket no. 5.

[92] Utah Code Ann. § 63G-7-401(4)(b).

[93] *Id.*

[94] Response at 2, ¶ 2, docket no. 17.

To establish a prima facie case, "an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."[95] "To prevail under section 510, an employee must demonstrate that the employer had the specific intent to interfere with his ERISA rights."[96] Section 510 prohibits employers from discharging or otherwise disadvantaging a participant for the purpose of interfering with the attainment of any right under an employee benefit plan.[97]

Ms. Jewkes' single ERISA allegation is about non-payment, not about discharge or other disciplinary action:

> 157. By refusing to supply to Plaintiff the health insurance stipend, and by paying a stipend less than similarly situated employees, as articulated in detail above, Defendant Orangeville interfered with Plaintiff's protected rights as set forth in 29 U.S.C.A. § 1140.[98]

The undisputed facts in the Amended Complaint and briefing show that Ms. Jewkes' lost approximately one paycheck's worth of her stipend towards her health insurance benefit.[99] This equates to approximately $300, for the first part of June.[100] Ms. Jewkes contends that Orangeville acted with specific intent to interfere with her ERISA rights:

> Paragraphs 40 and 42 of the Amended Complaint outline with clarity that Orangeville expressly refused to pay the opt-out stipend only to Ms. Jewkes, while other male employees were receiving the stipend for opting out of the health insurance plan. And Paragraphs 46 and 47 outline that the mayor attempted

---

[95] *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987).

[96] *Winkel v. Kennecott Holdings Corp.*, 3 F. App'x 697, 706 (10th Cir. 2001); (citing *Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir.1993)).

[97] *Pickering*, 809 F. Supp. at 1532 ("[S]ection 510 was designed to prevent an employer from discharging or constructively discharging an employee on the eve of pension vesting."); see also *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S. Ct. 478, 485, 112 L. Ed. 2d 474 (1990) (quoting the statute, 29 U.S.C. § 1140) (holding that this statute provides no remedy for withholding payment or making a payment late, and is specific to remedy the wrongful discharge was to interfere with the employee's right to benefits under the plan).

[98] Amended Complaint at 19, ¶ 157, docket no. 5.

[99] Reply at Exhibit B – Payroll Register 2023, docket no. 20-2.

[100] *See generally id.* (noting that this would be the pay period covering June 11th to June 24th).

16

> to pay her one half of the opt-out stipend, and the Orangeville reversed the payment. That is a very express and direct allegation of specific intent by the City to interfere with Ms. Jewkes right to receive the opt-out stipend that is a protected ERISA right.[101]

Ms. Jewkes also contends that there is specific intent to discriminate against her based on her gender,[102] based on her Amended Complaint:

> 41. A male City maintenance worker, Travis Richardson, also elected to receive the stipend rather than receive health insurance coverage through the City's health insurance plan, and the City Council immediately approved and paid it.[103]

Defendants dispute any discriminatory intent or intent to deny ERISA rights.[104] Ms. Jewkes does not provide any evidence of specific intent to violate ERISA other than her contentions that the Mayor's approval, the City Council's direction to reverse the payment, and then Orangeville's ultimate approval and payment of the $300 is evidence of specific intent to interfere with her benefits.[105]

In Utah a governing body "may by ordinance or resolution prescribe" health benefits "to be financed and administered in a manner and payable upon the terms and conditions" decided by the governing body.[106] The undisputed facts demonstrate that Orangeville's intent was to comply with the statute requiring that these changes be made by ordinance or resolution.[107] There are no specific facts, declarations, or supporting evidence that there was an intent to withhold Ms. Jewkes' benefits.

---

[101] Response at 5–6, docket no. 17.

[102] Response at 5, docket no. 17.

[103] *See generally* Amended Complaint at 5, ¶¶ 39–40, 42, docket no. 5; Declaration of Shaun Bell at 2, ¶¶ 10–11, docket no. 21.

[104] Reply at 20, docket no. 19.

[105] Response at 5–6, docket no. 17.

[106] Utah Code Ann. § 10-3-1103 (2).

[107] *See generally* Amended Complaint at 5, ¶ 41, docket no. 5.

Ms. Jewkes' contends that this specific intent is demonstrated through her claims that "other male employees were receiving the stipend for opting out of the health insurance plan."[108] She claims in her Charge of Discrimination, attached to her Response, that she was unable to attend the June 13, 2023 meeting because she was just released from the hospital, but that Mr. Richards' health insurance stipend election was approved.[109] On the contrary, the payroll register shows that Ms. Jewkes received a retroactive payment to compensate her for one of two alleged missed payments.[110] Mr. Richards did not.[111] The undisputed evidence—most notably the payroll registers—conclusively establishes that Mr. Richards did not receive his stipend earlier than Ms. Jewkes,[112] and there is no genuine dispute of material fact on this point.

Ms. Jewkes' Amended Complaint "need not prove that 'the *sole* reason for his [or her] termination was to interfere with pension rights.'"[113] However, "No ERISA cause of action [under § 510] lies where the loss of . . . benefits [i]s a mere consequence of, but not a motivating factor behind, a termination of employment."[114] The Amended Complaint does not allege the $300 discrepancy was the motivating factor behind her termination.[115] The alleged $300 shortfall and the Amended Complaints' paragraphs 40 through 42, and her ERISA cause of action (paragraphs 156 through 159), do not demonstrate that the motivating factor behind Ms. Jewkes' termination was to violate ERISA. Rather, in her fourth cause of action for wrongful termination

---

[108] Response at 5–6, docket no. 17.

[109] *Id.* at 5; *see also id.* at Exhibit A, 14, docket no. 17-1.

[110] Exhibit B – Payroll Register 2023, 9, 30 docket no. 20-2.

[111] *Id.*

[112] Declaration of Brittney Alger at 2, ¶ 11, docket no. 20; *see id.* at Exhibit A – Payroll Register 2022, docket no. 20-1; *see also id.* at Exhibit B – Payroll Register 2023, docket no. 20-2.

[113] *Gavalik*, 812 F.2d at 851.

[114] *Id.* (emphasis in original) (quoting . *Titsch v. Reliance Group, Inc.,* 548 F. Supp. 983, 985 (S.D.N.Y.1982), *aff'd,* 742 F.2d 1441 (2d Cir.1983)* (emphasis in original)).

[115] *See* Amended Complaint at 5–6, 19, docket no. 5.

she alleges that her termination was related to opposition to wage discrimination (not against her, but generally), and "after opposing the city council's attempt to not pay her coworker what she was rightfully owed."[116]

The Tenth Circuit has explained, "Proof of incidental loss of benefits as a result of a termination will not constitute a violation of § 510."[117] Here, a $300 discrepancy, absent evidence of interference (termination) to prevent Ms. Jewkes' from attaining her health insurance stipend, is an incidental loss and not a motivating factor.

Accordingly, summary judgment in favor of Orangeville on Ms. Jewkes' sixth cause of action for an ERISA violation is warranted.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss, having been converted to a Motion for Summary Judgment pursuant to Rule 12(d), is GRANTED.[118] The Court finds that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law. Accordingly, summary judgment is entered in favor of Defendants on the Amended Complaint, and the Amended Complaint is DISMISSED with prejudice.

Signed February 20, 2026.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[116] *See* Amended Complaint at 5–6, 19, docket no. 5 (noting that in her fourth cause of action for wrongful termination she makes no mention of the ERISA violation, " 135. Plaintiff was terminated a week after opposing the city council's attempt to not pay *her coworker* what she was rightfully owed.").

[117] *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1539 (10th Cir. 1993) (quoting *Gavalik.* 812 F.2d at 851).

[118] Docket no. 11, filed February 12, 2025.